UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

OSMONDO SMITH,

                                  **Plaintiff,**

        -against-

CORIZON HEALTH SERVICES and
THE CITY OF NEW YORK,

                                **Defendants.**

-----------------------------------------------------------X

14-cv-08839 (GBD)(SN)

<u>REPORT AND
RECOMMENDATION</u>

**SARAH NETBURN, United States Magistrate Judge.**

**TO THE HONORABLE GEORGE B. DANIELS:**

      *Pro se* plaintiff Osmondo Smith, currently incarcerated at Vernon C. Bain Center, brings this action against defendants Corizon Health Services and the City of New York (collectively, the "defendants") pursuant to 42 U.S.C. § 1983 for the violation of his Fourteenth Amendment right to medical information. The defendants moved to dismiss Smith's claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief can be granted. For the following reasons, I recommend that the defendants' motion be GRANTED, and that Smith's case be dismissed with leave to amend.

## BACKGROUND

      Smith alleges that while incarcerated at George R. Vierno Center ("G.R.V.C.") on Rikers Island, he developed diabetes after taking the antipsychotic medication Seroquel, though prison personnel did not disclose this side effect before a Corizon mental health worker prescribed it to him. (Compl. ¶ IV) ("I never had diabetes . . . now I'm Type II Diabetic . . . [and] the Defendant Corizon mental health worker never told me of any side effect from this medication name

'Seroquel.'") Smith further alleges that the defendants were aware that Seroquel causes diabetes, but continued to prescribe it to inmates without regard to their future health.[1] Id. ("[T]he NYC Dept of health know of these side effect, & . . . they are still giving these medication to inmate in custody . . . .") His symptoms include shakes, an accelerated heartrate, sweating, dizziness, constant hunger, impaired vision, headaches, fatigue, weakness, irritability, and anxiety. Smith also states that he must now monitor his blood sugar every day with a finger stick. (Compl. ¶ IV(A).) Smith alleges that he followed grievance procedures and complained to the G.R.V.C. authorities but was told to seek counsel and contact "medical." (Compl. ¶ II(F).) Construing the complaint liberally, Smith seeks monetary relief for a violation of his Fourteenth Amendment right to medical information.

    Smith filed his complaint on November 4, 2014 against Corizon Health Services, the New York City Department of Correction ("NYC DOC"), and the New York City Department of Health and Mental Hygiene ("NYC DOHMH"). On December 17, 2014, Judge Daniels referred this case to my docket for general pretrial supervision and to report and recommend on any dispositive motions. On December 19, 2014, the Court dismissed Smith's claims against the NYC DOC and NYC DOHMH as agencies of the City of New York and thus not entities that can be sued. N.Y. City Charter Ch. 17 § 396 ("[A]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."). See Emerson v. City of New York, 740 F. Supp. 2d 385, 396 (S.D.N.Y. 2010) (quoting Ch. 17 § 396); Echevarria v.

---

[1] In 2006, thousands of federal lawsuits alleging that Seroquel gave the plaintiffs diabetes were consolidated into multidistrict litigation before the United States District Court for the Middle District of Florida. See In re Seroquel Prods. Liab. Litig., No. 6:06 MD 1769-Orl-22 (DAB), 2006 WL 3929707 (M.D. Fla. Dec. 20, 2006), report and recommendation adopted, 2007 WL 219989 (M.D. Fla. Jan. 26, 2007).

Dep't of Corr. Servs., 48 F. Supp. 2d 388, 391 (S.D.N.Y. 1999) (same). Therefore, given Smith's *pro se* status and clear intention to bring claims against the City, the Court ordered the City of New York added as a defendant pursuant to Rule 21. On the same day, the Court denied without prejudice Smith's request to be appointed *pro bono* counsel at this early stage of the litigation.

The defendants moved to dismiss the complaint pursuant to Rule 12(b)(6) on March 27, 2015. Smith has not submitted an opposition to date. On May 8, 2015, the Court noted that Smith's opposition was due by April 27, 2015, and ordered this matter fully submitted if Smith did not file responsive papers or otherwise clarify his status by May 25, 2015. Because Smith did not file any documents by that deadline, the Court considers this motion fully submitted.

## DISCUSSION

### I. Standard of Review

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must take "factual allegations [in the complaint] to be true and draw[] all reasonable inferences in the plaintiff's favor." Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009) (citation omitted). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985) (citation omitted). The Court should not dismiss the complaint if the plaintiff has provided "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While the Court should construe the factual allegations in the light most favorable to the

plaintiff, "the tenet that [the Court] must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id.

When faced with a *pro se* plaintiff, the Court must "construe [the] complaint liberally and interpret it to raise the strongest arguments that [it] suggest[s]." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (citation and internal quotation marks omitted). See Haines v. Kerner, 404 U.S. 519, 520-21 (1972). "Even in a *pro se* case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis, 618 F.3d at 170 (internal quotation marks omitted). Thus, although the Court is "obligated to draw the most favorable inferences" that the complaint supports, it "cannot invent factual allegations that [the plaintiff] has not pled." Id.

## II. Smith's Constitutional Right to Medical Information

The defendants assert that this case must be dismissed because Smith's complaint does not satisfy the minimal pleading requirements for *pro se* plaintiffs or allege a § 1983 claim. Because I find that Smith did not articulate the requisite elements of a violation of the right to medical information or a claim for the defendants' municipal liability, I recommend dismissal of the complaint.

### A. Standard of Law

To establish a claim under § 1983, a plaintiff must show (1) a deprivation of a right secured by the Constitution or laws of the United States, and (2) that the person or entity who deprived the plaintiff of that right acted under the color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Newton v. City of New York, 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008). Section 1983 "does not create a federal right or benefit; it simply provides a mechanism for enforcing a right or benefit established elsewhere." Newton, 566 F. Supp. 2d at 269-70 (citing Morris-Hayes

v. Bd. of Educ. of Chester Union Free Sch. Dist., 423 F.3d 153, 159 (2d Cir. 2005)). Although the complaint does not explicitly name a specific constitutional right, the Court construes it to allege infringement of Smith's right to receive information necessary to refuse medical treatment, protected by the Due Process Clause of the Fourteenth Amendment.

The Supreme Court has established "a constitutionally protected liberty interest in refusing unwanted medical treatment," entrenched in the common law doctrine of informed consent. See Cruzan v. Director, Mo. Dep't of Health, 497 U.S. 261, 269, 278 (1990); See also Washington v. Harper, 494 U.S. 210, 221 (1990) (recognizing a prisoner's "significant liberty interest in avoiding the unwanted administration of antipsychotic drugs"); Vitek v. Jones, 445 U.S. 480, 494 (1980) (identifying transfer to a mental hospital for psychiatric treatment against prisoner's will as "the kind of deprivation[] of liberty that requires procedural protections"). Attendant to that interest, is the right to sufficient information as is reasonably necessary to make an informed decision whether to accept or reject proposed treatment. While decisions regarding medical care are ordinarily private, when the patient is a prisoner, the state necessarily plays a role in ensuring that the prisoner is provided adequate information such that he or she may knowingly consent to the proposed medical treatment. See Clarkson v. Coughlin, 898 F. Supp. 1019, 1049 (S.D.N.Y. 1995) (state violated deaf prisoners' Due Process rights by failing to provide sign language interpreters to communicate their treatment options).

Accordingly, the Court of Appeals for the Second Circuit has held that "to permit prisoners to exercise their right to refuse unwanted treatment, there exists a liberty interest in receiving such information as a reasonable patient would require in order to make an informed decision as to whether to accept or reject proposed medical treatment." Pabon v. Wright, 459 F.3d 241, 249-50 (2d Cir. 2006) (citing White v. Napoleon, 897 F.2d 103, 113 (3d Cir. 1990)).

5

For a prisoner to claim a violation of the right to medical information, he must: (1) fulfill an objective reasonableness standard; (2) demonstrate that the defendant's failure to provide medical information caused him to undergo treatment that he would have otherwise refused; and (3) show that the defendant exhibited deliberate indifference to his right to refuse the unwanted treatment. Id. at 250.

### B. Application

As described more fully below, Smith has sufficiently alleged the first two elements of this claim: that the prison failed to provide him adequate information to make an informed decision, and that this failure caused him to undergo treatment he otherwise would have refused. But because he does not allege that the defendants were deliberately indifferent to his right to refuse medical treatment, his claim must be dismissed.

#### 1. Objective Standard

In describing the objective component, the Court of Appeals has recognized that a prisoner's right to information does not encompass a right to "all conceivable information" or an "exhaustive list" of possible adverse effects of treatment. Id. "Instead, a doctor simply must provide a prisoner with such information as a reasonable patient would find necessary to making an informed decision regarding treatment options." Id.

Those cases that consider a substantive due process right to information regarding proposed medical treatment rarely analyze the objective standard prong of the test with much scrutiny. See, e.g., Alston v. Bendheim, 672 F. Supp. 2d 378, 384 (S.D.N.Y. 2009) (plaintiff's allegation that he was prescribed medication "without first informing Plaintiff of its addictive propensities, and the dangers this drug presents to a patient with a prior history of opioid dependency" satisfies the first prong of the test); Lara v. Bloomberg, No. 04 Civ. 8690 (KMW),

2008 WL 123840, at *4 (S.D.N.Y. Jan. 8, 2008) (plaintiff's allegation that he was not informed of the side effects of prescribed medication is assumed to satisfy the first prong of the test). Compare Pabon, 459 F.3d at 254 (on review of summary judgment, noting evidence that Pabon was not informed of the risks and side effects of the treatment and concluding that the allegations contained in the complaint were sufficient).

Here, Smith alleges that the defendants "never told me of any side effect of diabetes from this medication name 'Seroquel'" and that they "know of these side effect." (Compl. ¶ IV) This satisfies the objective component. Warning of a specific risk is objectively necessary if the side effect is known to the medical community and constitutes a serious medical condition. Because it is well-established that diabetes is a serious medical condition, and because Smith alleges that this side effect was known by the defendants, he has plausibly alleged the objective reasonableness element of this claim. The defendants do not contest this point. (Def. Br. at 6)

### 2. Impairment of the Right to Refuse Treatment

Construed liberally, the complaint also demonstrates that the defendants' omission prevented Smith from exercising his right to refuse Seroquel. To establish the violation of a constitutional right, a plaintiff must "be able to [show] that the underlying right at stake . . . actually was impaired." Pabon, 459 F.3d at 251. Thus, to recover for the state's failure to disclose medical information, a prisoner must show that he would have declined the proposed treatment had he known of its risks; if he would have accepted the treatment even with sufficient warning, then the state's failure to provide it is immaterial. Id. at 251-52. Here, Smith has alleged that the defendants did not tell him that Seroquel may cause diabetes before giving it to him. (Compl. ¶ IV, IV(A).) Although Smith does not explicitly state that he would have refused the drug if the defendants had warned him, the complaint's clear reference to his irritability and

7

frustration with his symptoms, coupled with a description of the serious impairments he now suffers (Type II Diabetes, shakes, fast heartbeats, anxiety, impaired vision, fatigue) demonstrates that he would have done so if fully advised. (Compl. ¶ IV, IV(A).) Given the other deficiencies in the complaint, the Court is willing to overlook Smith's failure to plead with specificity that he would have declined Seroquel if he had been properly informed of its potential side effects, and will instead accept the inference set forth in the complaint that he would not have permitted such treatment in retrospect. Should Smith amend the complaint, he should state this explicitly.

### 3. Deliberate Indifference

The complaint should be dismissed, however, because it does not allege that the defendants acted with deliberate indifference to Smith's right to refuse medical treatment, the third required element of his § 1983 claim. Because simple negligence cannot form the basis of a constitutional violation, a claim based on a violation of the right to medical information requires allegations of more than an official's inadvertent failure to provide it. Pabon, 459 F.3d at 250-51. See also Cnty. of Sacramento v. Lewis, 523 U.S. 833, 849 (1998) ("liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process"). In the prison context, courts impose a state of mind requirement to substantive due process claims against the government to accommodate for the state's responsibility to balance effective prison administration with the needs of each inmate. See Pabon, 459 F.3d at 250-51 (articulating a higher standard to allege a Fourteenth Amendment violation because "the touchstone of due process is protection of the individual against arbitrary action of government" rather than basic tort claims) (citing Sacramento, 523 U.S. at 845) (citations and internal quotation marks omitted). Thus, to hold the state liable for withholding medical information, a prisoner must

allege that an official acted with deliberate indifference to his right to refuse treatment. Id. at 251.

The Supreme Court has defined deliberate indifference as "a state of mind more blameworthy than negligence," but below the threshold of culpability for harmful acts or omissions done with purpose or knowledge that harm will result. Farmer v. Brennan, 511 U.S. 825, 835 (1994). See also Estelle v. Gamble, 429 U.S. 97, 104-06 (1978) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

As a preliminary matter, the Court notes that the defendants base their motion to dismiss on the deliberate indifference standard for an Eighth Amendment violation, where inadequate medical care in the prison setting constitutes cruel and unusual punishment. See Estelle, 429 U.S. at 104-06. To state a cause of action under this rationale, a plaintiff must allege both (1) an objectively serious deprivation of care, and (2) a sufficiently culpable state of mind "demonstrating a reckless disregard for the risk presented." Stevens v. Goord, 535 F. Supp. 2d 373, 383-84 (S.D.N.Y. 2008). See also Salahuddin v. Goord, 467 F.3d 263, 279-80 (2d Cir. 2006). That two-step test is inappropriate here because Smith's right to be told of Seroquel's risks does not implicate the Eighth Amendment. The Court of Appeals has held that, whereas the Eighth Amendment protects prisoners against substandard medical care, the Fourteenth Amendment protects their "liberty interest in making the decisions that affect [their] health and bodily integrity." Pabon, 459 F.3d at 253 (finding that "serious medical conditions" resulting from inadequate treatment trigger Eighth Amendment protection by causing "cruel and unusual punishment if not properly addressed"). Thus, "rather than concerning itself with *prison officials'* decisions, [the Fourteenth Amendment] governs *individuals'* decisions regarding the administration of treatment." Id. Because Smith alleges that the Corizon worker deprived him of

the opportunity to make such a decision in a meaningful way, a proper evaluation of his claim must apply the deliberate indifference standard under the Fourteenth Amendment, which is distinct from the standard under the Eighth Amendment. See Alston, 672 F. Supp. 2d at 384-90 (addressing constitutional claims through separate deliberate indifference standards for denial of proper medical care and failure to inform plaintiff of medication's side effects).

In the context of a Fourteenth Amendment violation, the deliberate indifference standard requires that the plaintiff "prove that [the defendant physician] deliberately withheld information" about the objectionable treatment. Bellamy v. Mount Vernon Hosp., No. 07 Civ. 1801 (SAS), 2008 WL 3152963, at *5 (S.D.N.Y. Aug. 5, 2008), aff'd, 387 F. App'x 55 (2d Cir. 2010). To satisfy this standard at the pleadings stage, the plaintiff must state factual allegations that a prison official "acted with the intent to induce [the prisoner] to undergo treatment he otherwise might have declined." Pabon, 459 F.3d at 254. See also Sacramento, 523 U.S. at 849 (holding that "conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level" necessary for constitutional liability); Daniels v. Williams, 474 U.S. 327, 331 (1986) ("Historically, [the] guarantee of due process has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property." (italics in original)). Thus, conclusory allegations that a defendant withheld information are insufficient to impose liability—a plaintiff must present facts raising suspicion that the defendant could have disclosed such information, knew it was necessary to decide whether to accept treatment, and chose not to share it, for the purpose of depriving him of the opportunity to exercise this right. See Alston, 672 F. Supp. 2d at 384-85 (citing Lara, 2008 WL 123840, at *5).

In Alston, the plaintiff did not allege his physician's deliberate indifference in failing to disclose the addictive properties of a drug the physician prescribed, even though the plaintiff's complaint stated that the physician knew it was addictive and that the plaintiff had a prior history of addiction. Id. Such statements did not demonstrate the deliberateness required for a violation because they did not allege that the physician "withheld information from him *for the purpose* of requiring Plaintiff to accept [the drug]." See id. at 385 (emphasis supplied). Similarly, the Lara court could not construe the complaint to allege deliberate indifference because medical records attached to the complaint revealed that the plaintiff's physicians had provided him with medical information regarding several treatments and allowed him to reject them. See 2008 WL 123840, at *4. Because these facts did not support that "the doctors' purported failure[] to inform Plaintiff of the side effects . . . [was] driven by [their] desire to require Plaintiff to accept the treatment offered," the court dismissed the prisoner's claim that the doctors violated his right to refuse the treatment. Id. at *5. In Bellamy, though the plaintiff claimed that his doctor purposely did not mention the risks of his procedure, the court granted the defendant summary judgment because the record indicated that the doctor had specifically addressed risks in a conversation with the prisoner. See 2008 WL 3152963, at *5. The court further held that even if the plaintiff had misunderstood this warning, such a "breakdown of . . . communication" did not rise to the requisite level of intent for a constitutional violation. Id.

In contrast, the Pabon complaint successfully established the defendant physician's deliberate indifference by stating that he told the plaintiff that the drugs he prescribed had no side effects, even though he had "full knowledge" that they may cause impotence and that the plaintiff had regular conjugal visits with his wife. 459 F.3d at 254. Although the Court of Appeals affirmed the summary judgment on qualified immunity grounds, the court found that the

complaint successfully made out a violation of the plaintiff's constitutional right to medical information. Id. Further, in White v. Napoleon, the Court of Appeals for the Third Circuit upheld the plaintiff's deliberate indifference claim because his complaint alleged that the defendant refused to reveal whether a medication contained penicillin, even though he was aware that the plaintiff was seriously allergic to it and the plaintiff had specifically inquired about its contents. 897 F.2d at 113-14. See also Clarkson, 898 F. Supp. at 1049 (holding that the defendants exhibited deliberate indifference by depriving deaf prisoners of interpreters, when they obviously could not make effective medical decisions without communicating with physicians).

Here, even under a liberal construction, the complaint lacks the specificity necessary to demonstrate that the Corizon worker who gave Smith Seroquel acted with deliberate indifference. While Smith alleges that the defendants knew that Seroquel causes diabetes and deliberately prescribed it to control inmates, he does not allege that the particular worker had this state of mind – that is, he was deliberately indifferent to Smith's right to refuse Seroquel based on knowledge that the medication could cause serious side effects. Without detailed reference to an incident or interaction with the worker that caused him to suspect the worker's deliberate indifference to his rights, Smith's claim that the worker never mentioned any side effects is too general to meet this circuit's pleading standard of intent for infringement of the Fourteenth Amendment right to medical information. See Pabon, 459 F.3d at 254. Absent this final element of Smith's claim, I recommend that the complaint be dismissed.

### III.    Municipal Liability

The complaint should also be dismissed because it does not demonstrate that the defendants acted pursuant to a custom or policy to hold them liable as municipalities under § 1983. To state a claim under § 1983, a plaintiff must allege both that (1) a right secured by the

Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law. West, 487 U.S. at 48. Municipalities, such as the City of New York, are "to be included among those persons to whom § 1983 applies." Monell v. Dep't of Soc. Servs. of the City of New York, 436 U.S. 658, 690 (1978). Courts in this circuit have determined that private agencies such as Corizon that provide healthcare to New York City's prisoners are also considered state actors for the purpose of § 1983 litigation. See, e.g., Hernandez v. Corizone Med. Dep't Staff, 14 Civ. 0192 (JPO), 2015 U.S. Dist. LEXIS 7361, at *2 n.3 (S.D.N.Y. Jan. 22, 2015) ("assum[ing] . . . that [Corizon] is subject to suit under § 1983" for staff's failure to treat burns effectively and refusal to send inmate to outside hospital); Law v. Corizon Med. Servs., No. 13 Civ. 5286 (KBF), 2014 WL 2111675, at *5 (S.D.N.Y. May 12, 2014) (holding that Corizon is "a company with which the City of New York contracts to provide medical services to inmates housed at [New York City Department of Correction] facilities, including Rikers" and thus performs municipal function for Monell purposes); Bess v. City of New York, 11 Civ. 7604 (TPG), 2013 U.S. Dist. LEXIS 39765, at *4 (S.D.N.Y. March 19, 2013) ("In providing medical care in prisons, Corizon performs a role traditionally within the exclusive prerogative of the state and therefore, in this context, is the functional equivalent of a municipality."). Thus, both defendants are subject to the strictures of Monell.

    A complaint brought under § 1983 alleging violations of a plaintiff's federally protected rights by a municipality, such as either of the defendants, must include factual allegations suggesting the existence of an officially adopted policy or custom of the municipality that caused the plaintiff's injury, and must also include allegations suggesting a direct and deliberate causal connection between that policy or custom and the violation of that plaintiff's federally protected rights. See Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 403-04 (1997);

Monell, 436 U.S. at 694.[2] A municipality cannot be found liable under § 1983 solely for the acts of its employees. Monell, 436 U.S. at 694. This rule applies equally to private institutions sued under § 1983: "Private employers are not liable under § 1983 for the constitutional torts of their employees unless the plaintiff proves that action pursuant to official . . . *policy* of some nature caused a constitutional tort. Although Monell dealt with municipal employers, its rationale has been extended to private businesses." Rojas v. Alexander's Dep't Store, Inc., 924 F.2d 406, 408-09 (2d Cir. 1990) (italics in original, citations and internal quotation marks omitted).

The City and Corizon argue that Smith has failed to allege facts demonstrating the existence of a policy or custom of either of these defendants that violated his federally protected rights. Thus, even if Smith plausibly pled that the Corizon worker violated his right to be informed of Seroquel's risks, his claim still would fail against these defendants because he has

---

[2]To demonstrate the existence of such a policy or custom, plaintiffs may cite "(1) a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by government officials responsible for establishing municipal policies which caused the alleged violation of the plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom or usage and implies the constructive knowledge of policy-making officials; or (4) a failure by official policy-makers to properly train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact." Jones v. Westchester Cnty. Dep't of Corr. Med. Dep't, 557 F. Supp. 2d 408, 417 (S.D.N.Y. 2008) (citations and internal quotation marks omitted). Courts may recognize a municipal custom when presented with evidence that a single occurrence is part of a routine or large number of instances. See, e.g., Nicholson v. Scoppetta, 344 F.3d 154, 165-66 (2d Cir. 2003) (municipal staff's routine denial of parental custody of children solely based on failure to prevent them from witnessing domestic violence was sufficient evidence of custom); Sorlucco v. New York City Police Dep't, 971 F.2d 864, 871-72 (2d Cir. 1992) (jury could find evidence of custom from multiple documented dismissals of female probationary officers introduced at trial); Gibson v. Comm'r of Mental Health, No. 04 Civ 4350 (SAS), 2008 WL 4276208, at *11 (S.D.N.Y. Sept. 17, 2008) (requiring that *pro se* plaintiff provide evidence of "numerous complaints of patient abuse at [defendants' facility] and . . . a consistent, pervasive policy or practice of not responding to such complaints" to survive defendants' motion for summary judgment); Gause v. Rensselaer Children & Family Servs., No. 10 Civ. 0482, 2010 WL 4923266, at *4 (N.D.N.Y. Nov. 29, 2010) (granting defendants' motion to dismiss because *pro se* plaintiff's "complain[t]s of acts in [her] specific case" were not "sufficient facts suggesting an unconstitutional policy or custom").

not pled the elements of municipal liability. The Court has liberally construed Smith's complaint. But he has not alleged that there is a policy or custom of the City or Corizon that violated his federally protected rights with respect to his decision to accept Seroquel. Smith has also failed to allege that there is a direct and deliberate causal connection between any such policy or custom and the Corizon worker's violation of his federally protected rights. Accordingly, I recommend that Smith's § 1983 claim be dismissed for failure to allege municipal liability.

### IV. Supplemental Jurisdiction

Under a liberal construction of the complaint, Smith may allege a valid claim under state law that the Corizon mental health worker negligently failed to obtain adequate consent to accept Seroquel. See, e.g., Rivers v. Katz, 67 N.Y.2d 485, 492-93 (1986) (citing N.Y. PUBLIC HEALTH LAW § 2805-d (McKinney 2015)). However, "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966). Accordingly, the Court should decline to find supplemental jurisdiction because it should dismiss Smith's only federal claim. See 28 U.S.C. § 1367(c)(3); Hernandez, 2015 U.S. Dist. LEXIS 7361, at *8.

### V. Leave to Amend

Rule 15 provides that leave to amend a party's pleading "shall be freely given when justice so requires." This is so because mere "technicalities" in the pleadings should not prevent cases from being decided on the merits. Dean v. Abrams, No. 94 Civ. 3704 (PKL), 1994 WL 240535, at *1 (S.D.N.Y. May 26, 1994) (citing United States v. Webb, 655 F.2d 977, 979 (9th Cir. 1981)). A district court has discretion whether to grant or deny leave to amend. Kevilly v. New York, 410 F. App'x 371, 375 (2d Cir. 2010) (quoting McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007)). "A district court may properly deny leave to amend for

'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" Wolk v. Kodak Imaging Network, Inc., 840 F. Supp. 2d 724, 735 (S.D.N.Y. 2012), aff'd sub nom. Wolk v. Photobucket.com, Inc., 569 F. App'x 51 (2d Cir. 2014) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). Repleading is futile where "[t]he problem with [a] cause[] of action is substantive[, and] better pleading will not cure it. . . . Such a futile request to replead should be denied." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000).

Further, Rule 21 states that on motion or *sua sponte*, the Court may add or drop a party at any time "on just terms." Rule 21 governs if the proposed amendment adds new parties. D'Attore v. New York City, No. 10 Civ. 6646 (WHP) (JCF), 2012 WL 2952853, at *3 (S.D.N.Y. July 19, 2012) (citing Michalek v. Amplify Sports & Entm't LLC, No. 11 Civ. 0508 (PGG), 2012 WL 2357414, at *1 (S.D.N.Y. June 20, 2012)). See also Sheldon v. PHH Corp., No. 96 Civ. 1666 (LAK), 1997 WL 91280, at *3 (S.D.N.Y. Mar. 4, 1997) ("[A] broad reading of Rule 15 would permit amendments for any purpose, including changes of parties. . . . Nevertheless, the preferred method is to consider such motions under Fed. R. Civ. P. 21, which specifically allows for the addition and elimination of parties . . . ."), aff'd on other grounds, 135 F.3d 848 (2d Cir. 1998). The Rule's purpose is to permit the addition of parties who "through inadvertence, mistake or for some other reason, had not been made a party and whose presence as a party is later found necessary or desirable." Fair Hous. Dev. Fund Corp. v. Burke, 55 F.R.D. 414, 419 (E.D.N.Y. 1972) (quoting Truncale v. Universal Pictures Co., 82 F. Supp. 576, 578 (S.D.N.Y. 1949)) (internal quotation marks omitted). In applying this Rule, the Court must be guided by the same liberal standard for motions to amend pleadings under Rule 15. Id.

Smith's claim that a Corizon mental health worker violated his constitutional right to be warned of Seroquel's risks is not futile. To present a valid § 1983 claim, however, Smith must provide a factual description of his encounter with the worker, indicating that the worker deliberately withheld this information with the intent to induce him to take Seroquel against his will. Smith is granted leave to amend his pleading against this Corizon mental health worker if he believes he can faithfully plead the elements described above. If Smith does not know the worker's identity, he may sue him or her as "John/Jane Doe" and provide as much information as possible, including a description of the person and the date(s) of their interaction(s). Because I recommend granting leave to amend the complaint to name the Corizon mental health worker as a defendant, leave should also be permitted to allow Smith to attempt to plead a municipal claim against Corizon and/or the City. To do so, Smith must identify either a policy endorsed by these municipal defendants or a series of repeated incidents at G.R.V.C. comprising a custom that caused the worker to violate his rights. Pure conclusory statements that such a policy exists will not suffice. See Gibson v. Comm'r of Mental Health, No. 04 Civ 4350 (SAS), 2008 WL 4276208, at *12 (S.D.N.Y. Sept. 17, 2008) (dismissing municipal liability claims because the allegations are conclusory and do not allege an actual policy or custom).

The Court thus recommends granting Smith leave to amend his complaint consistent with the above guidelines.

## CONCLUSION

For these reasons, I recommend that the defendants' motion to dismiss be GRANTED in its entirety, WITH LEAVE TO AMEND.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:   New York, New York
         July 31, 2015

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Daniels. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).

cc:   Osmondo Smith (*By Chambers*), ID# 241-12-08006
      Vernon C. Bain Center (VCBC)
      1 Halleck Street
      Bronx, NY  10474